**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Janice Roots, et al.,

        Plaintiffs,

  v.

Morehouse School of Medicine, Inc.,

        Defendant.

CIVIL ACTION NO.
1:07-cv-00112-JOF

## **OPINION & ORDER**

**I.   Background**

This matter is before the court on Defendant's motion to dismiss certain opt-in Plaintiffs [181], and Defendant's motion for summary judgment as to certain opt-in Plaintiffs [182]. The instant motions arise out of Plaintiffs' collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 209, *et. seq.*, against Defendant Morehouse School of Medicine for alleged overtime violations. The court conditionally certified a representative class and gave Plaintiffs permission to give the putative class members notice and a chance to "opt in." Many individuals opted-in to the suit,[1] and both of Defendant's

---

[1] A number of opt-in Plaintiffs have since filed voluntary dismissals.

motions pertain to some of those opt-in class members, rather than the named class members.

## II. Motion to Dismiss Certain Opt-in Plaintiffs for Failure to Prosecute and Cooperate in Discovery [181]

Defendant served written discovery on the fifty-nine opt-in Plaintiffs on October 3, 2008. On November 13, 2008, the opt-in Plaintiffs served general objections and responses to these written discovery requests, but at that time, none answered interrogatories individually. On March 16, 2009, some of the opt-in Plaintiffs provided individual, supplemental interrogatory responses to those written discovery requests. However, Defendant claims that thirteen of the opt-in Plaintiffs, as of the last day of discovery,[2] had not individually responded. Those Plaintiffs include: Erica Bitten, Breanna Ezzard, Veronica Floyd, Lawanda Gaston, Patricia Jones, Jarrell Marcus, Phyllis Martin, Teri McCoy, Tonya Pinckney, Joshua Shifrin, Michelle Stokes, Brandon Walton, and Gwendolyn Shamble.[3]

Defendant also served deposition notices seeking to depose nineteen of the opt-in Plaintiffs. Some of the Plaintiffs who were noticed for and attended their depositions subsequently filed for voluntary dismissals. Two opt-in Plaintiffs, Lawanda Gaston and Tonya Pinckney, however, did not file for voluntary dismissals and did not show up at their

---

[2] March 30, 2009

[3] Gwendolyn Shamble was not one of the opt-in Plaintiffs that Defendant originally placed on its list of those it wanted dismissed. She was added a few days after the motion to dismiss was filed but before Plaintiffs filed their response brief. D.E. [185].

2

scheduled, noticed deposition. Defendant also alleges that those two Plaintiffs failed to individually answer interrogatories, as noted above. Defendant further claims that opt-in Plaintiff Torrey Gore also failed to appear for his deposition. However, Plaintiffs note that Gore did in fact show up for his first scheduled deposition, but once he got there, the deposition was postponed. After that postponement, Gore did not respond to attempts to contact him to reschedule his deposition.

Defendant filed this motion to dismiss Plaintiffs Bitten, Ezzard, Floyd, Gaston, Jones, Marcus, Martin, McCoy, Pinckney, Shifrin, Stokes, Walton, Shamble, and Gore.[4] Defendant did not file a motion to compel prior to filing this motion to dismiss. In the present motion, Defendant requests that this court dismiss those opt-in Plaintiffs under either Fed. R. Civ. P. 41(b) or Fed. R. Civ. P. 37(d) based on the Plaintiffs' failure to participate in the discovery process. Defendant argues that the individual opt-in Plaintiffs have not offered any excuse for their failure to answer the interrogatories served on them or appear at noticed depositions. Defendant also contends that it has been prejudiced by the Plaintiffs' non-responsiveness because "[t]he discovery period is closed; the deadline for

---

[4] Plaintiffs' attorneys have not been able to contact Plaintiffs Ezzard, Jones, Marcus, Shifrin, or Stokes since they filed their opt-in consent. Plaintiffs' attorneys had some preliminary communications with Plaintiffs Bitten, Floyd, Gaston, Martin, McCoy and Pinckney, but "never received the information necessary to respond on their behalf regarding hours worked and damages claimed." D.E. [191], at 5.

3

decertification and dispositive motions is approaching; and should this case proceed to trial, [Defendant] would be ill-equipped to defend itself from unknown claims." D.E. [181], at 10.

Plaintiffs argue that under Eleventh Circuit law, Defendant must have filed a motion to compel before dismissal of any of the opt-in Plaintiffs is appropriate. Plaintiffs also assert that representative discovery is more appropriate in a class action like this, and Defendant does not need the requested discovery from each individual opt-in Plaintiff because other discovery has provided enough relevant information. Plaintiffs address some arguments to individual opt-in Plaintiffs. Plaintiffs argue that Gore should not be dismissed because he provided interrogatory responses and appeared for his originally scheduled deposition, and therefore, he clearly has participated in discovery to some extent, even if not fully. As such, the harsh sanction of dismissal is inappropriate. Plaintiffs also contend that Floyd has responded to some of the interrogatories served on her, and therefore, should not be dismissed because she has also partially participated in discovery somewhat. As to Walton and Shamble, Plaintiffs argue that they should not be dismissed because they have supplemented their responses to the interrogatory requests. Plaintiffs do admit that these supplemental responses were not given until after the discovery period closed.[5] As to the remaining opt-in Plaintiffs, Plaintiffs note that "this discovery dispute highlights the very

---

[5] However, Plaintiffs' attorneys spoke to Defendant on the last day of discovery and told Defendant that Shamble would be providing supplemental interrogatory answers, but that it would be after discovery closed.

AO 72A
(Rev.8/82)

reason that representative discovery is appropriate in collective actions." D.E. [191], at 15. Therefore, Plaintiffs request that this court conduct a scheduling conference "if individual responses are to be required . . . ." *Id.*

In reply, Defendant argues that dismissal is necessary because any other form of sanction will not do. If Plaintiffs' counsel has not been able to contact or locate the Plaintiffs since early on in the litigation, the only proper course of action is to dismiss them. Further, Defendant argues that because it is asking for a dismissal **without** prejudice, no motion to compel is required. Defendant reasserts its argument that responses from the individual Plaintiffs are necessary for it to be able to properly defend its case. Defendant also argues specifically that Plaintiffs Walton and Shamble provided responses to written discovery only after the discovery period ended, and this should not save them from dismissal.

Defendant requests that the court dismiss the opt-in Plaintiffs under either Fed. R. Civ. P. 41(b) or Fed. R. Civ. P. 37(d). Rule 41(b) says, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Defendant has not alleged that the individual opt-in Plaintiffs have violated a court order, nor has there been a complete lack of prosecution. Plaintiffs, as a class, have answered discovery, filed motions, filed responses to Defendant's motions, and otherwise participated in this litigation. Rule 41(b) is only applicable then because Defendant argues that Plaintiffs did not comply with the discovery rules. Consequently, Rule

5

37, which governs discovery, is more appropriate because it provides for its own sanctions for failure to comply with discovery requests.

Rule 37(d) allows a court to "order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition; or . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." One of the sanctions allowed by Rule 37 is dismissal. Fed. R. Civ. P. 37(b)(2)(A)(v). The Eleventh Circuit, however, has "consistently . . . found Rule 37 sanctions such as dismissal or entry of default judgment to be appropriate . . . only 'where the party's conduct amounts to flagrant disregard and willful disobedience *of discovery orders*.'" *U.S. v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997). "[W]here there was no prior discovery order . . . [there is a need] for a showing of bad faith or willful delay to support the sanction of dismissal." *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1366 (11th Cir. 2008). Although the above-quoted language refers to "dismissal" generally, the cases speak to dismissals with prejudice, rather than without prejudice.

There has been no order compelling the relevant opt-in Plaintiffs to comply with discovery, and Defendant never filed a motion to compel. Defendant simply filed this motion for dismissal on the last day of discovery. Defendant has also not shown bad faith or willful delay by the opt-in Plaintiffs. The court recognizes that Defendant is only asking

6

for a dismissal without prejudice, which is certainly not as harsh a sanction as dismissal with prejudice. However, Plaintiffs Bitten, Floyd, Gaston, Martin, McCoy, Pinckney, Walton, Shamble, and Gore have participated to some extent, and the court will not assume that they have given up their right to participate in the current litigation. As to those Plaintiffs, T̶ the court still finds that Defendant should have filed a motion to compel before filing this motion to dismiss. The court, therefore, DENIES Defendant's motion to dismiss as to Plaintiffs Bitten, Floyd, Gaston, Martin, McCoy, Pinckney, Walton, Shamble, and Gore . However, the court will give Defendant time to file a motion to compel, even though the discovery period has ended. Defendant has ten (10) days from the date of this order to file a motion to compel.

The court also recognizes that Plaintiffs' attorneys have not had any contact with the following Plaintiffs since they opted into the suit: Plaintiffs Ezzard, Jones, Marcus, Shifrin, or Stokes. As to those five opt-in Plaintiffs, the court GRANTS Defendant's motion to dismiss without prejudice. If Defendant would like to convert this motion into a motion to dismiss **with** prejudice, Defendant may file a motion to compel as to Plaintiffs Ezzard, Jones, Marcus, Shifrin, or Stokes within ten (10) days of the date of this order at each of their last known addresses.

7

## III. Motion for Summary Judgment [182]

### A. Factual Background and Contentions

During the course of this litigation, three of the opt-in Plaintiffs have either been in or are still in Chapter 13 bankruptcy: Lillie Grady-Hall, Monica Scott, and Carole Sharpe. The facts in this case are generally undisputed, although the parties do dispute the inferences to be drawn.

Plaintiff Grady-Hall filed for bankruptcy in March of 2006, and she is currently still in bankruptcy. Her Chapter 13 plan was confirmed on June 14, 2006. She opted into this lawsuit on August 12, 2008. As of the time Defendant filed this motion for summary judgment, April 3, 2009, Grady-Hall had not disclosed to the bankruptcy court her interest in this litigation. She has since filed amended financial disclosures in her bankruptcy case to reflect her claims in the present lawsuit.[6] Those amendments were filed on September 17, 2009. Grady-Hall's debts have not been discharged, and she is still currently in bankruptcy.

Plaintiff Scott entered into Chapter 13 bankruptcy as a joint debtor on February 21, 2008. Her Chapter 13 plan was confirmed on July 3, 2008. She opted into this lawsuit on July 28, 2008. As of the time Defendant filed this motion for summary judgment, Scott had not disclosed to the bankruptcy court her interest in this litigation. She has since filed amended financial schedules in her bankruptcy case to reflect her claims in the present

---

[6] D.E. [203-3], at Ex. G.

lawsuit.[7] Those amendments were filed on September 17, 2009. Scott's debts have not been discharged, and she is still currently in bankruptcy.

Plaintiff Sharpe filed for bankruptcy on February 9, 2004. Her Chapter 13 plan was confirmed on April 27, 2004. Sharpe's opt-in consent form was not filed with this court until September 6, 2007, but her signature on the form is dated August 6, 2007. Sharpe filed a voluntary dismissal of her bankruptcy case on September 16, 2008, and her case was dismissed on September 18, 2008. This voluntary dismissal did not result in the discharge of any of her debts. As of the time her bankruptcy case was dismissed, Sharpe had not disclosed to the bankruptcy court her interest in this litigation.

According to affidavits provided by Plaintiffs, Grady-Hall, Sharpe, and Scott were unaware that they needed to disclose to the bankruptcy court their FLSA claims against Defendant. According to Grady-Hall's affidavit, as soon as she learned she might have to report her claim in this litigation to the bankruptcy court, she spoke with her bankruptcy attorney. D.E. [201], Ex. A, at 3. She informed him of her claim in this case and "assumed that [her] bankruptcy attorney was taking care of notifying the bankruptcy court," but later learned that he had done nothing. *Id.* at 4. Scott also declares that in March of 2009, upon learning that she might have to disclose her claims in this case to the bankruptcy court, she called her bankruptcy attorney to inform of this case, assumed he was taking care of it, but

---

[7] D.E. [203-3], at Ex. E.

later learned that he had not. D.E. [201], Ex. B, at 2-3. Sharpe also declares that she contacted her former bankruptcy attorney in March of 2009 when she became aware that this case might need to be disclosed to the bankruptcy court. D.E. [201], Ex. C, at 2. Her bankruptcy had already been dismissed at that point, and her bankruptcy attorney told her there was nothing that needed to be done. *Id*. at 2-3.

Defendant contends that Plaintiffs' claims are barred by the doctrine of judicial estoppel because all three failed to disclose to the bankruptcy court their respective interest in this litigation. Defendant argues that Plaintiffs had a duty to disclose such interest, knew of that duty to disclose,[8] had a motive to, and did in fact, intentionally conceal their interest in this litigation. Plaintiffs argue that Sharpe, Scott, and Grady-Hall were not aware that they needed to disclose their interest in this litigation to the bankruptcy court until March of 2009, when Defendant took the depositions of Scott and Grady-Hall. Because the three Plaintiffs all then immediately contacted their respective bankruptcy attorneys to facilitate the amendment process, Plaintiffs argue that this shows they did not have the necessary intent to deceive or conceal, and therefore, their claims should not be barred by judicial estoppel.

---

[8] Defendant bases this assertion, in part, on the following. At some point **prior** to opting into the present case, all three Plaintiffs, through their attorneys, filed amended schedules to their bankruptcy filings. *See* D.E. [182-3], at Ex. A (Grady-Hall); D.E. [182-3], at Ex. B (Scott); and D.E. [182-3], at Ex. C (Sharpe). Each Plaintiff has also been in bankruptcy previously. *See* D.E. [182-3], at Ex. D (Grady-Hall); D.E. [182-3], at Ex. E (Scott); and D.E. [182-3], at Ex. F (Sharpe).

10

**B.  Discussion**

Defendant contends that Plaintiffs Grady-Hall, Scott, and Sharpe should be judicially estopped from asserting their FLSA claims based on their non-disclosure of this case to the bankruptcy court. In *Burnes v. Pemco Aeroplex, Inc.*, the Eleventh Circuit described judicial estoppel as follows:

> Judicial estoppel is an equitable doctrine invoked at a court's discretion. Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." The purpose of the doctrine, "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. . . . [J]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings."

291 F.3d 1282, 1285 (11th Cir. 2002) (internal citations omitted). Defendant must show two elements. *Id*. First, Defendant must show that "the allegedly inconsistent positions were made under oath in a prior proceeding." *Id*. Second, Defendant must show that the inconsistencies were "calculated to make a mockery of the justice system." *Id*. However, "these two . . . factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of" judicial estoppel. *Id*. at 1286.

A debtor in bankruptcy has a duty to disclose all potential assets to the bankruptcy court, and this duty requires the debtor to amend his financial statements if his circumstances

11

change. *Burnes*, 291 F.3d at 1286. It is undisputed that Plaintiffs Grady-Hall and Scott did not disclose the current litigation to the bankruptcy court until September of 2009, over a year after they opted into this case. It is also undisputed that Plaintiff Sharpe never disclosed her interest in the present litigation to the bankruptcy court prior to her bankruptcy case being dismissed. All three Plaintiffs took inconsistent positions under oath in prior proceedings. *Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1294 (11th Cir. 2003). Consequently, the only question then is whether Plaintiffs had the requisite intent to make a mockery of justice. For judicial estoppel to apply in the present case, Plaintiffs' failure to disclose the current proceedings to the bankruptcy court must not be "simple error" or inadvertent. *Id*. Failure to disclose is inadvertent only where Plaintiffs lacked knowledge of the undisclosed claims[9] or lacked a motive to conceal their claims. *Id*. at 1287. A motive to conceal can be inferred from the record. *See id*.

The court looks to the decision by the Eleventh Circuit in *Burnes* for guidance. The debtor in *Burnes* filed for Chapter 13 bankruptcy on July 3, 1997. 291 F.3d at 1284. When he filled out his bankruptcy financial affairs form, the form asked him to list all suits to which he is or was a party to within one year of filing for bankruptcy. *Id*. He checked none because at the time he was not participating in any lawsuits. *Id*. In January of 1998, the

---

[9] It is clear to the court, and the parties agree, that as of the date each Plaintiff opted-in to the present case, they could certainly no longer claim they lacked knowledge of their FLSA claims.

12

debtor filed a charge with the Equal Employment Opportunity Commission (EEOC) against his employer, the defendant. *Id*. And on December 9, 1999, over a year since he filed for bankruptcy, the debtor and thirty-five others filed an employment discrimination suit against the defendant. *Id*. The debtor did not amend his Chapter 13 bankruptcy filings after filing the employment discrimination suit. *Id*. In October of 2000, the debtor moved to have his Chapter 13 bankruptcy petition converted into a Chapter 7 bankruptcy action. *Id*. He had to file amended financial statements with this request but again failed to mention the lawsuit against the defendant. *Id*. The debtor later received a "'no asset,' complete discharge of his debts . . . ." *Id*.

The defendant moved for summary judgment, requesting that the debtor be judicially estopped from asserting his employment discrimination claim based on the debtor's complete failure to disclose the employment suit to the bankruptcy court before receiving a no asset discharge. *Burnes*, 291 F.3d at 1284. The district court granted summary judgment to the defendant, and the Eleventh Circuit affirmed that decision as to the debtor's monetary claims. *Id*. at 1284, 1289. The Eleventh Circuit held that "the record . . . contain[ed] sufficient evidence from which to infer intentional manipulation by" the debtor. *Id*. at 1287. The debtor did not amend during the pendency of his Chapter 13 case, and even when given a clear opportunity to do so, he again failed to disclose the employment discrimination suit when he petitioned to convert his case into a Chapter 7 bankruptcy proceeding. *Id*. at 1288.

13

Furthermore, the debtor would likely not have received a no-asset, complete discharge of his debts if he had disclosed the employment suit, in which there were claims for "millions of dollars in damages," to the bankruptcy court and his creditors. *Id*. The debtor's bankruptcy proceedings continued for three years after he filed his claim with the EEOC, but he never amended his bankruptcy filings. The Eleventh Circuit affirmed the district court's grant of summary judgment to the defendant, judicially estopping the debtor from pursuing his monetary damages claim against the defendant in the employment discrimination case. *Id*. at 1289.

### Plaintiff Grady-Hall

Defendant argues that the record clearly infers a motive to conceal, and the court should accept that inference and judicially estop Grady-Hall from asserting her FLSA claims. Grady-Hall had knowledge of this present case since August of 2008, yet she did not amend her bankruptcy proceedings to reflect her claims in this case until September of 2009. Although Grady-Hall argues that she did not know she needed to amend her bankruptcy filings until the end of March 2009, she still waited over five months to file an amendment. Defendant also contends that Grady-Hall should have known of her duty to disclose as this is not the first time she has filed for Chapter 13 bankruptcy, and even if she did not know of her duty to disclose, this is irrelevant. Grady-Hall had knowledge of her discrimination

14

claim, and a motive to conceal because concealing the claims might have lessened the amount she had to pay her creditors.

Grady-Hall, in turn, argues that she had no idea she needed to disclose her interest in the current lawsuit to the bankruptcy court, and that as soon as she learned she might have to disclose such interest, she contacted her bankruptcy attorney immediately. Plaintiff alleges that she was unaware that her bankruptcy attorney had not taken any action on her behalf. She further argues that because she has received no discharge, because her Chapter 13 case has not been converted to a Chapter 7-no asset proceeding, and because she has now amended her bankruptcy filings to include her claims in this case, she clearly had no motive to conceal. Furthermore, Plaintiff filed her opt-in consent for this case and her bankruptcy claim in the same court, and this also "negates the inference that [she] engaged in 'cold manipulation' in an attempt to hide claims from the bankruptcy court." D.E. [201-1], at 11. Finally, Plaintiff Grady-Hall argues that the Eleventh Circuit had not announced "that debtors have a clearly established duty to post-confirmation assets that [sic] not necessary for the plan" until a case decided in August of 2008. *Id.* at 13-14.[10]

---

[10] The court finds the argument has no merit. Plaintiffs have made no assertion that their interest in the current suit was not necessary for the maintenance of their confirmed Chapter 13 plan. Furthermore, in the case Plaintiffs cite, the Eleventh Circuit itself points out that it previously held "that a debtor had a duty to amend his schedule of assets to disclose a complaint that he filed after his plan to pay his creditors had been confirmed." *In re Waldon*, 536 F.3d 1239, 1246 (11th Cir. 2008) (citing *Ajaka v. BrooksAmerica Mortgage Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006).

15

There will more often than not be a financial motive to secret assets when in Chapter 13 bankruptcy because "the hiding of assets affects the amount to be discounted and repaid." *See De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291. The court also acknowledges that it is irrelevant that Grady-Hall's bankruptcy attorney failed to amend her bankruptcy filings in March of 2009 after she informed him of her interest in this case. *Barger,* 348 F.3d at 1295 (holding that where an attorney's failure to list a lawsuit as an asset in his client's bankruptcy filing, "the attorney's omission [was] no panacea." ). However, while a motive to conceal can be inferred from the record, the court does not have to accept such inference. *Snowden v. Fred's Stores of Tennessee, Inc.*, 419 F. Supp. 2d 1367, 1373 (M.D. Ala. 2006). *See also Barger,* 348 F.3d at 1296 ("Thus, [plaintiff's] knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation."); *De Leon*, 321 F.3d at 1292 ("Because [plaintiff] certainly knew about his claim and possessed a motive to conceal it ..., we **can** infer from the record his intent to make a mockery of the judicial system.") (emphasis added) (internal quotations omitted). As debtors who have knowledge of their potential claims will often have a motive to conceal those assets from the bankruptcy court, the court must keep in mind that there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

16

Any inference of a motive to conceal in the present case has been sufficiently rebutted by Grady-Hall and the record. The court first notes that the present case is not as clear cut as *Burnes*. Unlike the debtor in *Burnes*, none of the Plaintiffs in the present case made affirmative misrepresentations to the bankruptcy court. The failure to amend does not create the same inference as the case where the debtor has knowledge of or has filed his non-bankruptcy claim prior to filing for Chapter 13 bankruptcy. Grady-Hall made no affirmative misrepresentations, merely failed to amend, and her debts were never discharged nor did she convert her Chapter 13 bankruptcy into a Chapter 7 no-asset case. She had no knowledge of her claim at the time she filed for bankruptcy or at the time her repayment plan was confirmed. Had Plaintiff amended her bankruptcy case to reflect this claim, her previously confirmed plan may possibly have been affected but neither party informs that court how or in what way. Her actions simply do not rise to the level of being "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1284.

Furthermore, "[w]hen a debtor discloses assets acquired after confirmation to the court, his creditors may share in any unanticipated gain if the court determines that these assets are available to repay debts. . . . Under the ability-to-pay standard, creditors share both the gains and losses of the debtor." *In re Waldon*, 536 F.3d at 1246. As Plaintiff's bankruptcy case has now been amended to include the present claim, and her creditors are likely now aware of her interest, it would actually hurt her creditors to disallow her

17

pursuance of this claim. *See Snowden*, 419 F. Supp. 2d at 1375 ("If debtors automatically forfeited all claims they did not disclose, creditors could lose access to substantial assets . . . . Simply put, such a requirement could actually harm creditors."). The purpose of judicial estoppel in this situation is to protect the creditors from being defrauded. Dismissing Plaintiff Grady-Hall now that such interest has been disclosed would not protect her creditors. While the court recognizes that a lengthy delay in amending bankruptcy filings can be probative of a party's intent, the court finds that the circumstances do not warrant judicial estoppel.

The court, exercising its discretion, holds that Plaintiff Grady-Hall is not estopped from pursuing her claims in the present litigation.[11] Defendant's motion for summary judgment against Plaintiff Grady-Hall is DENIED.

**Plaintiff Scott**

The factual background surrounding Scott's failure to amend is very similar to that of Grady-Hall, and Defendant makes the same arguments for judicial estoppel of Scott's FLSA claims. Because the ultimate goal of protecting Plaintiff Scott's creditors would not be served by dismissal, and for those reasons stated above, the court holds that Plaintiff

---

[11] The court notes that Plaintiffs, in their complaint, request injunctive relief as well as monetary damages. Complaint, at 14. Plaintiffs cannot be judicially estopped from asserting their claims for injunctive relief because the court does not find and the parties do not argue that the injunctive relief claims would have added any value to the Plaintiffs' respective bankruptcy estates. *See Burnes*, 291 F.3d at 1289.

18

Scott is not estopped from pursuing her claims in the present litigation. Defendant's motion for summary judgment against Plaintiff Scott is DENIED.

**Plaintiff Sharpe**

Again, construing all facts in the light most favorable to the nonmoving party, Plaintiff Sharpe, the court finds that Plaintiff Sharpe also lacked the intent to manipulate the judicial system by omitting her involvement in the pending case. Her debts were not discharged, she dismissed her bankruptcy case over a year ago, and she filed for bankruptcy and had her plan confirmed over three years before opting into this suit. Furthermore, Plaintiff's voluntary dismissal of her case "ensures that there is no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Russell v. Promove, LLC*, No. 1:06-CV-00659-RWS, 2009 WL 1285885, slip op. at *3 (N.D. Ga. May 5, 2009) (Story, J.) (internal quotations omitted) (citing *New Hampshire*, 532 U.S. at 750-751; *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (7th Cir. 1982)). Again, the ultimate goal here is to protect a bankruptcy debtor's creditors from being defrauded. Dismissing Plaintiff Sharpe would not serve that purpose. Defendant's motion for summary judgment against Plaintiff Sharpe is DENIED.

AO 72A
(Rev.8/82)

### IV. Conclusion

Defendant's motion to dismiss certain opt-in Plaintiffs is DENIED IN PART and GRANTED IN PART [181]. However, Defendant can file a motion to compel, if it so chooses, for those reasons discussed previously in this order. That motion to compel must be filed with this court within ten (10) days from the date of this order.

Defendant's motion for summary judgment against certain opt-in Plaintiffs is DENIED [182].

**IT IS SO ORDERED** this 8th day of December 2009.

                                     /s J. Owen Forrester
                                     J. OWEN FORRESTER
                SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)